## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Red Black Tree D.O.O. | § | **C.A. No. 1:22-cv-7834** |
| Plaintiff, | § | |
| v. | § | |
| Hotel Credits, Inc. | § | **Complaint** |
| and Deepak Shrivastava, | § | **Jury Trial Demanded** |
| | § | |
| Defendants. | § | |
| | § | **1.  Breach of Contract** |
| | § | **2.  Account Stated** |
| | § | **3.  Voidable Transfers (NY & Del.)** |
| | | **4.  Alter Ego** |
| | | **5.  Derivative Claim – Breach of Fiduciary Duties** |

1

## COMPLAINT

Plaintiff Red Black Tree D.O.O. ("RBT" or "Plaintiff"), by and through its counsel and for its Complaint against Hotel Credits, Inc., formerly known as Porter & Sail, Inc. ("P&S") and Mr. Deepak Shrivastava (collectively referred to as "Defendants") hereby alleges as follows:

## PARTIES

1.      Plaintiff RBT, a private company organized and existing under the laws of Serbia with its principal office at Dvadesetprve divizije 11, 11000 Belgrade, Serbia, provides software development services to clients around the world.

2.      Defendant Hotel Credits, Inc., formerly known as Porter and Sail, Inc., and which is referred herein as "P&S" or "Hotel Credits," is a corporation formed on December 6, 2013 and existing under the laws of the State of Delaware.

3.      On January 26, 2021, Defendant P&S filed a Certificate of Amendment, changing its name from "Porter and Sail, Inc." to "Hotel Credits, Inc." with the Secretary of State of Delaware.

4.      Defendant P&S maintained a regular office in New York City during the relevant periods, and presently, upon information and belief, has a virtual office at 60 Broad Street 24th Floor, Suite 2401, New York, NY 10004.

5.      Upon information and belief, Defendant Deepak Shrivastava resides in Torrance, CA, was a co-founder, and the Chief Operations Officer (COO) and the Chief Financial Officer (CFO) of P&S.

2

6.      Upon information and belief, Ms. Caitlin Zaino von During was a co-founder and the Chief Executive Officer (CEO) of P&S and was a Director of Product and/or General Manager of Guest Experience at Luxury Escapes (which is described below).

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction under 28 U.S.C. §1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of a State and citizens or subjects of a foreign state.

8.      This Court has personal jurisdiction over Defendant P&S because, among other reasons, Defendant P&S expressly and irrevocably consented to the personal jurisdiction and venue of the state and federal courts located in the Southern District of New York pursuant to the "Independent Contractor Agreement" dated February 9, 2015 (the "Agreement") with Plaintiff.

9.      This Court has personal jurisdiction over Defendant Deepak Shrivastava because he was employed in New York City by Defendant P&S and was an officer of Defendant P&S that had a regular office in New York City during the relevant or applicable periods with respect to the issues in this action.

10.      Moreover, this Court has specific jurisdiction over Defendants P&S and Mr. Deepak Shrivastava under NYCPLR §302 (a)(1) because they transacted business within the State of New York, and the exercise of jurisdiction over P&S would not offend traditional notions of fair play and substantial justice because it regularly conducted business through

3

a principal office in New York City during the relevant or applicable periods with respect to the issues in this action.

11.     Venue is proper in this District because (1) Defendant Deepak Shrivastava signed the Agreement in New York City as a "co-founder," not as an officer of P&S, and treated P&S as his alter ego, and thus also irrevocably consented to the jurisdiction of this Court under the Agreement, and (2) he resided in New York City when he was an officer of Defendant P&S having an office in New York City during the relevant or applicable periods with respect to the issues in this action.

## INTRODUCTION

12.     Upon information and belief, P&S was founded in 2015.

13.     RBT enabled P&S to provide digital concierge services to hotels worldwide by developing cutting-edge mobile concierge technology – a mobile application that serves as a digital concierge system for client hotels.  The mobile application enabled hotel guests to conveniently find independent recommendations on what to do, eat, and drink; make restaurant reservations before and during their stay at their hotel; map out their travel plans; discover destinations through the lens of insiders; communicate with their host hotels; and filter and favorite their travel destinations.

**The Contract**

14.     RBT and P&S entered into an "Independent Contractor Agreement" (the "Agreement") at P&S's at its regular office in New York City on February 9, 2015 (the "Effective Date") to develop the mobile concierge technology for P&S.  See Ex. 1.

15.     Defendant Deepak Shrivastava signed the Agreement as "Co-Founder" and purportedly on behalf of P&S on March 25th, 2015.

16.     Pursuant to Section 2.1 of the Agreement, RBT "will provide two full time resources to work on the Porter and Sail project."

17.     Pursuant to Section 2.2 of the Agreement, P&S promised to pay RBT "blended monthly fee per resource (person) at a rate of USD 8,000.00 through monthly installments of USD 16,000.00 per month."

18.     Pursuant to Section 4.1 of the Agreement, P&S promised to "pay each invoice, referencing Porter and Sail's purchase order number, submitted by [RBT] (remit to: deepak@porterandsail.com, caitlin@portersail.com) within eight (8) days following receipt thereof."

19.     Pursuant to Section 9.1 of the Agreement, "the Effective Date and, unless terminated earlier in accordance with the terms of this Agreement, will remain in force and effect for as long as [RBT] is performing Services pursuant to a Statement of Work."

20.     Pursuant to Section 12.8 of the Agreement, the parties agreed that "[a]ny legal action or proceeding arising under this Agreement will be brought exclusively in the

federal or state courts located in the Southern District of New York and the parties hereby irrevocably consent to the personal jurisdiction and venue therein."

## Conduct of the Parties During Contractual Term

21.    During the term of the Agreement, P&S employed several employees at its regular New York City office.

22.    Pursuant to the terms of the Agreement, RBT assigned developers to work on P&S projects.  The number of resources, i.e., developers assigned to P&S, typically fluctuated between 4 and 6 resources in accordance with the requests of P&S.  However, there were periods in 2018 and 2019 when P&S requested and RBT supplied 7 to 8 resources.

23.    Technical cooperation between P&S and RBT went well throughout the term of the contract as there was continual common understanding between RBT and P&S through its Chief Executive Officer, Ms. Caitlin Zaino von During, and later with its Chief Technical Officer (CTO), Ms. Shao Chen who, upon information and belief, was based in P&S's regular New York City office during the contractual period.

24.    Ms. Caitlin Zaino von During, Mr. Deepak Shrivastava and Ms. Shao Chen were always satisfied with the contractual performance of RBT, and RBT received praises on numerous occasions.  For example, Ms. Shao Chen, Chief Technology officer of P&S stated in an email dated June 21, 2017:  "Just wanted to drop a note to say thank you for putting in all the extra hard work, long hours, and effort into helping us submit V3 of the

6

Porter & Sail app.  The feedback we've been getting from the rest of the team has been fabulous, thank you."

25.     Pursuant to the Agreement, RBT issued monthly invoices at the end of each month with a specified payment due date of eight (8) days from the date of the invoice.

26.     Until March 2016, payments for the invoices were generally received by RBT from Defendant Shrivastava's bank account via wire transfer within two months of the dates of the monthly invoices.  Thereafter, payments became sporadic (e.g., a $20K payment was received by wire transfer in February 2018).

27.     In early 2017, the last partial payments to RBT from Defendant Shrivastava's bank account were: (1) on February 6, 2017 for invoice dated December 31, 2016, (2) on March 10, 2017 for invoices dated August 31, 2016 (which was more than 180 days delinquent) and January 31, 2017, and (3) on May 16, 2017 for the invoice dated September 30, 2016 (which was more than 200 days delinquent).  See attached Ex. 2 (Statement of Accounts).

28.     Thereafter, no payments were received for any further monthly invoices dated October 31, 2016 and later (the "Delinquency Period") except for a $20K payment received in February 2018.

29.     Nonetheless, RBT continued to perform its contractual obligations and frequently reminded P&S executives of the increasing outstanding balances in writing including emails and text messages.

7

30.     RBT conducted numerous in-person business meetings with Mr. Deepak

Shrivastava and Ms. Caitlyn Zaino von During in New York City during the contractual

period including meetings on January 24, 2019 and May 31, 2019.

**False Promises of Payments**

31.     Throughout the Delinquency Period, Plaintiff received numerous assurances

that the outstanding balances will be paid.

32.     For example, on Aug 24 2017, Ms. Caitlin Zaino von During stated in an

email:  "Yes, you can expect a wire before the end of the month. I've been following up with

Deepak to see which one and how much, but the short answer is: yes. Of course these

delays are unexpected, and thanks for working with us as we get through it."

33.     For another example, on October 20, 2017, Ms. Caitlin Zaino von During

stated in an email: "Deepak and I worked through some of our initial cash outflow based on

the small injection of capital we recently received. Unfortunately, some invoices to RBT will

now be paid closer to the end of the month, rather than the end of the week. I understand

that this is not ideal. We will continue to work diligently to get to the place we need to be

asap so that we can clear all of your debt. To that end, please see attached our first version

of our Series A deck. Please be mindful that this will change and we expect some iterations.

Thank you very much."

34.     For another example, on January 3, 2018, Ms. Caitlin Zaino von During stated

in an email:  "Thank you for sending on the invoice. We had a small amount of capital come

in right before the end of 2018 and we can pay 5K right now to RBT. I know that is very,

very little. But, I wanted to begin to "chip away" at what we have, even if it is that — just a

chip. I know it's not much, but every time we get something in, we want to allocate some for

you, if even in good faith until we make a big pay down."

35.     For another example, on Feb 5 2018, Ms. Caitlin Zaino von During stated in

an email:  "We have $1 million committed which we've been told will reach our account at

the end of February/ early March (knock on wood). We are targeting the final closing within

a few weeks thereafter. We won't be able to pay the balance at once, but as soon as that

initial $1mm hits, we will make significant inroads and plan to continue to do so until the total

is paid off, presumably before end of April."

36.      For another example, on April 18, 2018, Ms. Caitlin Zaino von During stated

in an email:  "Huge apologies; I try to not to disappear for too long but have been traveling. I

want to get you something by end of the month. I'm meeting our lead investor again on

Friday to work through timing of funds. I'll have more information probably by early next

week (he tends to run things by his investors in HK). I'll circle back early next week with

more detail. I will do everything I can to get something your way."

37.     For another example, on May 2, 2018, Ms. Caitlin Zaino von During stated in

an email: "Branko, if you could share with us here *all* outstanding invoices, Matt and I will

devise a payment plan for the payables to share with you. Of course it may deviate based

on any meaningful capital injection but I'm hoping that we can create a structure that's manageable regardless of that so we can start to address the payables."

38.    For another example, on May 31 2018, Ms. Caitlin Zaino von During stated in an email:  "I do not think we're in a position to provide anything before the end of the month, unfortunately. I wanted to get you something straight away but we're still negotiating. I want to set up a payment structure and have that start in June. I want to begin knocking down our outstanding invoices. I can't do this until I have confirmation on this deal. I was hoping to have it closer to today but that would also mean funding within a week, at the earliest, which puts us outside of June 1."

39.    For another example, on July 24 2018, Mr. Deepak Shrivastava stated in an email:  "Hi Branko - thanks for bearing with me. Am in the middle of closing another check coming in - pls give me 24-36 hours and I'll know how much we will be able to wire through before EOM."

40.    On August 2, 2018, Ms. Caitlin Zaino von During emailed a payment schedule, which provided:  (1) $800K to be paid out over 5 months starting Oct 15, 2018; (2) From October 2018, monthly invoices to be paid on time (~$56K/mo); (3) the remaining balance to be paid as one lump sum in March 2019 (~$162K); (4) in the event of defaults of 30 days or more, interest immediately begins accruing at 6% annually;  (4) for defaults of 60 days or more (at any time), interest to be accrued at 8% annually;  (5) for defaults of 90 days or more (at any time) increases interest to 10% annually; (6) P&S will pay a full

10

balance in advance of 31 December 2018; and (7) P&S will pay $25K on or before 31 Aug &

30 Sept, respectively.  See Ex. 3 (Payment Schedule).

41.     On September 5, 2018, Ms. Caitlin Zaino von During stated in an email:

"Regarding payment on 15 October: It is absolutely confirmed. We have made that

commitment and we do not intend to waver."  However, no such payment was received, and

which would have been for an amount of $216K.

42.     On Mar 14 2019, while outstanding balance exceeds $1.1m, Ms. Caitlin Zaino

von During stated in an email:  "Per our conversation yesterday, in good faith we can

endeavor to pay our monthly invoices, starting with March 2019. I see the payment terms

are 8 days so once the March invoice is delivered, we'll work to meet that invoice within the

billing period laid out."

43.     On October 7, 2019, on a Facetime call, Mr. Deepak Shrivastava stated that

$150K would be wired to RBT upon P&S's receipt of funding from an investor.

44.     On November 28, 2019, Ms. Caitlin Zaino von During confirmed receipt of

funding from the investor.

45.     On December 4, 2019, Ms. Caitlin Zaino von During denied in an email that

RBT would be paid upon receipt of funding the investor and that the Board of P&S had not

yet approved payment to RBT for the outstanding debt.

46.     On December 10, 2019, upon reminder of the outstanding debt owed to RBT, Ms. Caitlin Zaino von During stated in an email: "No movement to share. I understand that's not the answer but that is the answer."

47.     On December 23, 2019, Ms. Caitlin Zaino von During stated in an email: "As mentioned on text, the Board does not believe we have the financial stability to effect a major pay down at this time and are asking us to close on the remainder of Series A by end of January. Should we do so, then we can effect a pay down of $150K in February and a fixed month-over-month payment, plus our current bills."  RBT received no such payments.

48.     On January 31, 2020, Mr. Deepak Shrivastava acknowledged in an email to RBT the outstanding debt of $1,523,330.01: "Duly noted, Branko. Thank you."

49.     On February 27, 2020, RBT, through its counsel, sent a letter to both Ms. Caitlin Zaino von During and Mr. Deepak Shrivastava demanding immediate payment of the outstanding debt.  See Ex. 4.

50.     On March 27, 2020, Ms. Caitlin Zaino von During stated that "We have lost any committed revenue for March, have not paid our staff their wages for March, and are waiting for relief from the government so that we can retain employees and move the business forward."  In other words, P&S was insolvent.

51.     On March 4, 2020, during a conference call, P&S CTO, Ms. Shao Chen instructed RBT to suspend all work by the end of the week (i.e., March 6, 2020.) stating,

among other things, that Ms. Caitlin Zaino von During "decided to put a pause" on the project.

52.     On September 1, 2020, Ms. Caitlin Zaino von During offered different options for payments in 2021 and stated that "we do not have any money – simply put.  We could not meet any of the payment obligations …." and that the "mobile app and pre arrival platform do not have relevancy in this environment."    See Ex. 5.

53.     On September 11, 2020, RBT emailed Ms. Caitlin Zaino von During offering P&S a Promissory Note to memorialize Ms. Caitlin Zaino von During's payment terms and threatened legal actions to collect the outstanding debt.  See Ex. 5.

54.     Neither Mr. Deepak Shrivastava nor Ms. Caitlin Zaino von During responded to the offered Promissory Note.

55.     On September 30, 2020, Mr. Deepak Shrivastava revoked Ms. Caitlin Zaino von During's offer of September 1, 2020 and stated in an email that "the Company does not have any ability nor the capital base to remit funds for any past invoices" and that "we do have the ability to offer is equity in the new iteration of the Company.  This is one potential path, and one that we are able to grant, where both parties can work constructively towards capital being realized."  In other words, Mr. Deepak Shrivastava wanted RBT to exchange all of its outstanding debt for equity in his insolvent company or a company in a zone of insolvency.

56.    In retrospect, Ms. Caitlin Zaino von During and Mr. Deepak Shrivastava induced Plaintiff to rely on their false promises and to delay any legal proceedings so that P&S may later sell the RBT-developed mobile concierge technology, which Ms. Caitlin Zaino von During claimed has no relevancy in this environment, to Luxury Escapes thereby leaving P&S insolvent and unable to pay RBT the outstanding debt.

## Alter Ego

57.    P&S was the mere instrumentality of Mr. Deepak Shrivastava.

58.    Mr. Shrivastava paid RBT directly from his personal bank account throughout the contractual period for all RBT invoices issued to P&S.

59.    Indeed, Mr. Shrivastava made twenty-four (24) wire transfers to RBT's bank account.

60.    On September 30, 2020, Mr. Shrivastava revoked P&S's offer of September 1, 2020, memorialized by Ms. Caitlin Zaino von During, to pay RBT all of the outstanding debt by December 2021.  Instead, Mr. Shrivastava offered an equity stake in an insolvent P&S in exchange of Plaintiff's outstanding debt when P&S's only and important asset, the mobile concierge technology developed by RBT, would be transferred to Luxury Escapes soon thereafter.

61.    Notably, Mr. Shrivastava's offer of equity to RBT was not subject to any approval of the Board and/or shareholders of P&S thereby affirming that P&S is his mere instrumentality.

62.     Accordingly, Mr. Shrivastava, as an alter ego of P&S, is liable to RBT for all of the outstanding debt owed by P&S plus interest.

## Fundings and Acquisitions

63.     Upon information and belief, P&S received at least about $11.6 million during the contractual period of the Agreement from equity and/or debt financings including:  (1) $1,152,000 on or about March 16, 2016, (2) $980,000 on or about January 18, 2017, (3) $912,000 on or about January 12, 2018, (4) $4,725,000 on or about February 6, 2019, and (5) $2,000,000 on or about September 24, 2019.

64.     Upon information and belief, on or about January 9, 2017, P&S acquired in an "all cash transaction" Mconcierge Systems Inc. (dba "GuestDriven"), a company founded in 2010 and headquartered in Montreal, Canada, which provides a Mobile Guest Engagement platform that helps hotels directly interact with guests, learn their preferences, build relationships and upsell inventory through personalized, moment-based targeted offers and communications.

65.     The financial terms of P&S's acquisition of GuestDriven were not disclosed.

66.     Upon information and belief, on or about August 24, 2020, P&S acquired "FutureKey," which offered future hotel credits at deep discounts.

67.     The financial terms of P&S's acquisition of FutureKey were not disclosed.

15

68.     According to phocuswire.com, in an article dated August 24, 2020 by Ms. Mitra Sorrells, FutureKey was launched in April to sell discounted gift cards for future hotel stays.

69.     Upon information and belief, FutureKey was a corporation formed in Florida on April 14, 2020 and dissolved on August 31, 2020, thereby existing for less than five (5) months.

70.     Upon information and belief, on or about February 11, 2021, about sixteen (16) days after P&S changed its name to Hotel Credits, Inc. through the filing of a Certificate of Amendment with the State of Delaware on January 26, 2021, P&S's mobile concierge technology developed by RBT and other properties were acquired by "Luxury Escapes" (the "Transfer") for an undisclosed amount according to phocuswire.com.

71.     Upon information and belief, "Luxury Escapes" as a brand may refer to Luxury Escapes Travel Pty Ltd (Australian Business Register ABN 16 150 650 927) ("Luxury Escapes Travel") is a company organized and existing under the laws of Australia having an office at Level 4, 68 Clarke Street, Southbank, VIC 3006 and operates the website luxuryescapes.com.

72.     Upon information and belief, "Luxury Escapes" as a brand may also refer to Lux Group Limited (Australian Business Register ABN 11 601 688 966) ("Lux Group"), having an office at Level 4, 68 Clarke Street, Southbank, Victoria, 3006 Australia, which is a

privately-owned business based in Melbourne founded in 2009 by Messrs. Jeremy Same and Adam Schwab.

73.     Upon information and belief, Luxury Escapes Travel is a sub-organization or subsidiary of Lux Group and whose website is operated by Lux Group (hereinafter, Luxury Escapes Travel and Lux Group are collectively referred to as "Luxury Escapes").

74.     In an article dated February 11, 2021, by Ms. Samantha Smith of the Travel Industry Hub, entitled "Luxury Escapes Acquires New York-Based Porter & Sail," Ms. Caitlin Zaino von During stated "Luxury Escapes is an exceptional company and bringing Porter & Sail's guest technology to the group offers a unique opportunity to proliferate our innovative platform to millions of members and leading hotels, worldwide."

75.     This article also stated "Luxury Escapes co-founder, Adam Schwab, is excited by the new functionality for members, noting 'we are always looking for new ways to enhance the travel experience – making in-travel experiences seamless and easy is incredibly important. The ability to make bookings and purchase valuable add-ons like room upgrades, day trips, dining and spa bookings will ensure that Luxury Escapes creates the world's best holiday experience for all our members, from the moment they book their trip, until they return home."

76.     Upon information and belief, Mr. Adam Schwab is a co-founder and Chief Executive Officer of Lux Group Limited and a director of Luxury Escapes Travel Pty. Ltd.

77.     After the transfer of the RBT-developed mobile concierge technology and other properties to "Luxury Escapes," P&S failed to notify Plaintiff of the transaction or to offer any settlement of the outstanding debt owed to Plaintiff.

78.     On March 22, 2021, P&S's secured creditor, 3PCG INC, filed with the New York State an amendment to its UCC Financing Statement terminating its lien on P&S.

79.     Upon information and belief, after P&S's transfer of proceeds to its secured creditors and insiders received from the Transfer, P&S remained or rendered insolvent as it no longer had sufficient assets to satisfy the outstanding debt owed to Plaintiff.

80.     Indeed, on July 19, 2021, the Internal Revenue Service filed with the New York State a federal tax lien on P&S.

81.     To date, the outstanding debt remains unpaid and the Defendants have not contacted Plaintiff concerning repayment of the outstanding debt.

82.     Upon information and belief, P&S is no longer an operating entity or operating in a zone of insolvency.

**Count I**
**Breach of Contract**
**(Against P&S)**

83.     Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

84.     RBT has fully performed its obligations under the Agreement.

85.     Defendant P&S has breached and continues to breach the Agreement by failing to pay RBT the fees pursuant to Sections 2.2 and 4.1 of the Agreement despite RBT's persistent reminders to P&S of the increasing outstanding balance throughout the delinquency period.

86.     P&S also breached in bad faith the implied covenant of good faith and fair dealing under the Agreement by giving numerous excuses for its nonpayment of the myriad past-due invoices from 2016 and throughout the delinquency period and deliberately avoided payment of the past-due amounts despite its receipt of funding of more than $11.1 million from investors.

87.     By reason of the facts and circumstances stated above, Plaintiff has been damaged by Defendant P&S in the amount of at least $1,551,330.01 plus interest.

88.     By reason of the facts and circumstances stated above, Plaintiff seeks punitive or exemplary damages in the amount of at least $1,551,330.01 plus interest against P&S because P&S's breach of the Agreement is willful or wanton, for the purpose of depriving Plaintiff the benefits of the Agreement.

**Count II**
**Account Stated**
**(Against P&S)**

89.     Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

90.    By reason of the facts and circumstances stated above, Defendant's partial payments of the outstanding balance and receipt and retention of Plaintiff's invoices sent after about September 2016 seeking payment for professional services rendered, without objection within a reasonable time, gives rise to an actionable account stated.   See attached outstanding invoices in Ex. 6.

91.    By reason of the facts and circumstances stated above, Plaintiff has been damaged by Defendant P&S in the amount of $1,551,330.01 plus interest.

<u>Count III</u>
**Voidable Transfer under New York Debtor & Creditor, §273(1)
(Against All Defendants)**

92.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

93.    P&S intended to hinder, delay or defraud Plaintiff by, for example, making false promises of repayment of the outstanding debt while actively engaged in various business expansions through various acquisitions and up until the Transfer, which included the RBT-developed mobile concierge technology, to Luxury Escapes.

94.    The Transfer was of substantially all or the essential assets of P&S.

95.    P&S was insolvent or became insolvent shortly after the Transfer was made.

96.    Therefore, the Transfer to Luxury Escapes in February 2021 is voidable to the extent necessary to satisfy the outstanding debt in the amount of $1,551,330.01 plus interest under New York Debtor & Creditor §276(a)(1).

97.     Plaintiff is damaged by the Transfer in the amount of at least $1,551,330.01 plus interest.

98.     Defendants shall be enjoined against further disposition of their assets pursuant to under New York Debtor & Creditor §276(a)(3)(i).

## Count IV
### Fraudulent Transfer under Delaware Code, Title 6, §1304(a)(1)
### (Against All Defendants)

99.     Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

100.     P&S intended to hinder, delay or defraud Plaintiff by, for example, making false promises of repayment of the outstanding debt while actively engaged in various business expansions through various acquisitions and up until the Transfer, which included the RBT-developed mobile concierge technology, to Luxury Escapes.

101.     The Transfer was of substantially all or the essential assets of P&S.

102.     P&S was insolvent or became insolvent shortly after the Transfer was made.

103.     Therefore, the Transfer to Luxury Escapes is fraudulent.

104.     The Transfer is voidable to the extent necessary to satisfy the outstanding debt in the amount of $1,551,330.01 plus interest pursuant to Delaware Code, Title 6, § 1307(a)(1).

105.     Plaintiff is damaged by the Transfer in the amount of at least $1,551,330.01 plus interest.

21

106.     Defendants shall be enjoined against further disposition of their assets pursuant to Delaware Code, Title 6, § 1307(a)(3).

## Count V
### Alter Ego
### (Against Deepak Shrivastava)

107.     Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

108.     Defendant Deepak Shrivastava, viewing P&S's debts as his own, paid Plaintiff RBT twenty four (24) times throughout the contractual period from his own personal bank account(s) for the RBT invoices issued to P&S, which payments representing all payments received by RBT during the contractual period.

109.     Defendant Deepak Shrivastava also held himself out as an alter ego of P&S by offering equity of P&S to Plaintiff without board oversight or approval.

110.     Accordingly, Defendant P&S was an alter ego of Defendant Deepak Shrivastava because P&S was his mere instrumentality during the delinquency period.

111.     By reason of the facts and circumstances stated above including the account stated and breach of contract, Plaintiff has been damaged by Defendant Deepak Shrivastava in the amount of $1,551,330.01 plus interest.

112.     Based on the facts and circumstances stated above, Plaintiff is entitled to punitive and exemplary damages because his breach of the Agreement is willful or wanton, for the purpose of depriving Plaintiff the benefits of the Agreement.

## Count VI
## Derivative Claim – Breach of Fiduciary Duties
## (Against Deepak Shrivastava and other directors and officers)

113.    Plaintiff restates and realleges each of the allegations set forth above and incorporates them herein.

114.    P&S was insolvent or in a zone of insolvency at or about the time it sold its mobile concierge technology to Luxury Escapes.

115.    Plaintiff as a creditor and on behalf of P&S, an insolvent corporation or operating in a zone of insolvency, hereby brings a derivative action against the officers and directors of P&S, including Mr. Deepak Shrivastava and other directors and officers for breach of fiduciary duties of due care, good faith, and loyalty by engaging in frauduluent and/or voidable transactions relating to the acquisition of RBT-developed mobile concierge technology by Luxury Escapes and by breaching the implied covenant of good faith and fair dealing of the contract with RBT.

116.    These officers and directors, at the time of said fraudulent and/or voidable transactions, acted in their own interests and/or interests of insiders instead of the company's best interests by, for example, (1) failing to obtain sufficient funds from the Transfer to Luxury Escapes in order to pay its creditors including the Internal Revenue Service and Plaintiff, (2) diminishing value of the P&S by transferring the RBT-developed technology to Luxury Escapes, and (3) its inability to continue operations of its business after the Transfer to Luxury Escapes to the detriment of its creditors.

23

117.    P&S is further injured by the continuing burden of Plaintiff's outstanding debt.

118.    P&S is further injured by the failure of its officers and directors to negotiate in good faith with Plaintiff by making numerous false promises over several years up until the Transfer to Luxury Escapes.

119.    Upon information and belief, P&S was valued by its insiders in excess of $15M in 2019 during a negotiation with Marriott International, Inc. or its affiliate(s) ("Marriott") for possible acquisition of the RBT-developed mobile concierge technology by Marriott.

120.    On or about May 1, 2019, Mr. Deepak Shrivastava informed Plaintiff that P&S could not accept the deal proposed by Marriott because their offer of $10M would only cover expenses including debt but will not leave much for the founders, i.e., Mr. Deepak Shrivastava and Ms. Catilin Zaino von During.

121.    Accordingly, P&S is damaged in excess of $15M plus interest, litigation costs and attorney fees due to the diminution of value of P&S resulting from said breach of fiduciary duties by its officers and directors including Defendant Deepak Shrivastava.

122.    Upon information and belief, a demand under Delaware Court of Chancery Rule 23.1 is futile because (1) P&S is presently a non-operating entity with a virtual office, or (2) P&S is/was an alter ego of Deepak Shrivastava.

## DEMAND FOR TRIAL BY JURY

Plaintiff RBT demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RBT prays for the following relief:

1.  Award any and all damages sustained by RBT as a result of P&S's account stated and breach of Agreement described in Counts I and II;

2.  Unwind the Transfer to Luxury Escapes described in Count III and Count IV;

3.  Award any and all damages sustained by RBT as a result of the voidable and/or fraudulent transfers described in Count III and Count IV;

4.  Enjoin Defendants from further disposition of assets by Defendants described in Count III and Count IV;

5.  Award any and all damages sustained by RBT as a result of the account stated and breach of Agreement by Defendant Deepak Shrivastava's alter ego, i.e., P&S, as described in Count V;

6.  Award P&S in excess of $15M plus interest including litigation costs and attorney fees against Defendant Deepak Shrivastava and other directors and officers of P&S as described in Count VI;

7.  An award of attorney's fees, costs, expenses, and disbursements; and

8.      Such other and further relief as the Court deems Plaintiff may be entitled to in

law and equity.

Dated: September 13, 2022                   Respectfully submitted,
                                            /s/ Chi Eng
                                            Chi Eng
                                            New Jersey Bar No. 038821993 (admitted
                                            SDNY)
                                            chi@englawfirm.com
                                            ENG LAW FIRM
                                            One Gateway Center, Suite 2600
                                            Newark, NJ 07102
                                            Telephone: 646.770.2347
                                            Facsimile: 646.568.7231

                                            **_Counsel for Plaintiff_**