UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RED BLACK TREE, D.O.O.,

                      Plaintiff,

-v-

HOTEL CREDITS, INC., and DEEPAK SHRIVASTAVA,

                      Defendants.

CIVIL ACTION NO.: 22 Civ. 7834 (JGK) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

On September 13, 2022, Plaintiff Red Black Tree D.O.O. ("RBT") filed a complaint (the "Complaint") against Defendants Hotel Credits Inc. ("HCI"), formerly known as Porter & Sail, Inc. ("P&S"), and Deepak Shrivastava ("Shrivastava", with HCI, "Defendants"), alleging claims arising from Defendants' alleged failure to pay RBT $1,551,330.01 for services RBT performed pursuant to an Independent Contractor Agreement between RBT and HCI (the "Agreement") and Defendants' alleged unlawful transfer of assets, including technology that RBT developed under the Agreement.[1] (ECF No. 1 ¶¶ 87, 93).

RBT now moves for leave to amend the Complaint. (ECF No. 33 (the "Motion")). Specifically, the Proposed First Amended Complaint seeks to add as defendants the members of HCI's Board of Directors, Mohan Subrahmanyam, Leland Kwee, Aaron Yoo, Moon YoonWhe, and Caitlin Zaino von During (collectively, the "Directors"). (ECF No. 33-1 (the "PFAC")).

---

[1] RBT and Shrivastava refer to HCI as P&S, while HCI calls itself HCI, which is the nomenclature the Court will employ. (Compare ECF Nos. 1 ¶¶ 2, 4; 10 ¶ 4; and 33-1 with ECF No. 13).

No opposition to the Motion has been filed. For the reasons set forth below, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The Court summarizes the allegations in the PFAC, which the Court accepts as true for the purposes of resolving the Motion. See Fin. Fuar. Ins. Co. v. Putnam Advisory Cor., 783 F.3d 395, 398 (2d Cir. 2015); Jingle Kids USA LLC v. In Co. June 6lour Capital Inc., No. 22 Civ. 7089 (JHR) (SLC), 2023 WL 5016496, at *1 n.1 (S.D.N.Y. June 6, 2023), adopted by, 2023 WL 6389080 (S.D.N.Y. Oct. 2, 2023).

RBT is a software developer. (ECF No. 33-1 ¶ 1). On February 9, 2015, RBT and HCI, a Delaware corporation, entered into the Agreement, pursuant to which RBT undertook to develop a mobile application (the "Application") that would allow HCI to provide "digital concierge services" (the "Project"). (Id. ¶¶ 20, 21; see id. ¶ 2). Specifically, the Application would enable hotel guests to find "independent recommendations on what to do, eat, and drink; make restaurant reservations . . . ; map out their travel plans; discover destinations . . . ; communicate with their host hotels; and filter and favorite [sic] their travel destinations." (Id. ¶ 20). Shrivastava signed the Agreement as HCI's "Co-Founder." (Id. ¶ 22). Pursuant to the Agreement, RBT agreed to "provide two full time resources [i.e., developers] to work on the" Project, and HCI agreed to pay RBT a "blended monthly fee" of $16,000.00 per month, i.e., $8,000.00 per developer, within eight days of receipt of each RBT invoice. (Id. ¶¶ 23–25, 29). The Agreement was to remain in effect "for as long as [RBT] is performing Services pursuant to a Statement of Work." (Id. ¶ 26).

RBT proceeded to assign staff to work on the Project, "typically" between four and six developers "in accordance with the requests of" HCI, although "there were periods in 2018 and 2019 when [HCI] requested and RBT supplied" seven to eight developers. (ECF No. 33-1 ¶¶ 28–29). HCI indicated that it was satisfied with RBT's work. (Id. ¶¶ 30–31).

RBT issued monthly invoices, which, until March 2016, HCI paid within two months by wire transfer from Shrivastava's bank account. (ECF No. 33-1 ¶¶ 32–33). "Thereafter, payments became sporadic[.]" (Id. ¶ 33). HCI made delinquent partial payments on February 6, 2017, March 10, 2017, and May 16, 2017. (Id. ¶ 34). HCI's last payment was in the amount of $20,000.00 in February 2018. (Id. ¶ 33; see ECF No. 33-3 at 2). "Nonetheless, RBT continued to perform its contractual obligations and frequently reminded [HCI] executives of the increasing outstanding balances in writing[.]" (ECF No. 33-1 ¶ 36). HCI provided RBT with "numerous assurances that the outstanding balances will be paid[,]" all of which were "false promises" by HCI "to delay any legal proceedings" and enable HCI to "later sell the RBT-developed mobile concierge technology" to a third party as part of an asset purchase agreement, "thereby leaving [HCI] insolvent and unable to pay RBT the outstanding debt." (Id. ¶¶ 38—40, 63, 89, 93).

RBT alleges that HCI "was the mere instrumentality of [] Shrivastava[,]" as evidenced by his payment of RBT's invoices from his personal bank account. (ECF No. 33-1 ¶¶ 64–65). As further evidence that Shrivastava is "an alter ego of" HCI and "liable to RBT for all of the outstanding debt owed by [HCI] plus interest[,]" RBT cites Shrivastava's offer to RBT of "an equity stake in an insolvent" HCI, noting that the offer "was not subject to any approval by the [Directors] or shareholders" of HCI. (Id. ¶¶ 67–69). Despite HCI's delinquency in paying RBT's invoices, HCI, "[u]pon information and belief . . . received at least [] $11.6[ million] during the

3

contractual period of the Agreement from equity and/or debt financings[.]" (Id. ¶ 70; see id. ¶¶ 71–100). For example, RBT contends that on February 11, 2021, HCI sold to "Luxury Escapes" the Application that RBT had developed for HCI. (Id. ¶¶ 85–98 (the "Luxury Escapes Transaction")). RBT alleges that, through the Luxury Escapes Transaction and other asset transfers, HCI "rendered [itself] insolvent as it no longer had sufficient assets to satisfy the outstanding debt owed to" RBT. (Id. ¶ 100). To date, HCI has not paid RBT the outstanding amounts due under the Agreement. (Id. ¶ 102).

### B. Procedural History

On September 13, 2022, RBT filed the Complaint asserting six causes of action: (i) breach of contract against HCI (the "Breach of Contract Claim"); (ii) account stated against HCI (the "Account Stated Claim"); (iii) voidable transfer under New York Debtor & Creditor Law § 273(1) against all Defendants (the "Voidable Transfer Claim"); (iv) fraudulent transfer under Delaware law against all Defendants (the "Fraudulent Transfer Claim"); (v) alter ego against Shrivastava (the "Alter Ego Claim"); and (vi) a derivative breach of fiduciary duty claim against Shrivastava and "other directors and officers" (the "Breach of Fiduciary Duty Claim"). (ECF No. 1 ¶¶ 83–122). RBT seeks, inter alia, damages of at least $15 million, the unwinding of the Luxury Escapes Transaction, an injunction preventing Defendants from further disposition of HCI's assets, and attorneys' fees and costs. (Id. at 25–26).

On October 25, 2022, Shrivastava filed an answer to the Complaint and, on November 2, 2022, HCI filed its answer. (ECF Nos. 10; 13). On November 25, 2022, the Honorable John G. Koeltl entered a case management plan setting, inter alia, October 25, 2022 as the deadline to amend pleadings pursuant to Federal Rule of Civil Procedure 15(a) (after which amendments

would only be permitted on a showing of "good cause" under Federal Rule of Civil Procedure 16(b)(4)), May 27, 2023 as the fact discovery deadline, and August 4, 2023 as the expert discovery deadline. (ECF No. 17 (the "CMP")).

On April 14, 2023, RBT requested a court conference to discuss Defendants' non-compliance with their discovery obligations. (ECF No. 19). That same day, Judge Koeltl referred this action to the undersigned for general pretrial supervision. (ECF No. 20). Between May 3, 2023 and July 20, 2023, the Court held multiple conferences to address these issues and the possible resolution of this action through a stipulated judgment. (ECF Nos. 19; 21; 23; 27; 29; 32; see ECF min. entries May 3, 2023, June 12, 2023, July 20, 2023). During a conference on July 20, 2023, it became apparent that resolution through a stipulated judgment was untenable, and RBT requested leave to file a motion to amend the Complaint, for which the Court set a deadline of August 11, 2023. (ECF min. entry July 20, 2023; ECF No. 31).

On August 8, 2023, RBT filed the Motion and PFAC, which seeks to name the Directors as defendants and assert the Breach of Fiduciary Duty Claim against them. (ECF No. 33-1 ¶¶ 136–47; see ECF No. 33 at 8). RBT also argues that the Directors' "actions and inactions . . . relating to the alleged corporate transactions in the original [C]omplaint are relevant to" RBT's Voidable Transfer and Fraudulent Transfer Claims. (ECF No. 33 at 8). No opposition to the Motion has been filed.

### III. LEGAL STANDARDS

#### A. Leave to Amend

Determining which Rule governs a motion to amend turns on whether "the motion is timely filed under [the] scheduling order in place in th[e] action. If it is timely filed, only Rule 15's liberal standard governs; if it is not, [the moving party] must also show good cause for the amendment under Rule 16." Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (requiring motion to amend filed after court-ordered deadline to meet requirements of both Rule 15(a)(2) and Rule 16(b)(4)).[2]

##### 1. Rule 15(a)(2)

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."). "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021) (citing Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)).

To determine if a new claim creates "prejudice" to the opposing party, the court considers whether the claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993); see Jenkins v. NYC Health & Hosps. Corp., No. 21 Civ. 2848 (JGK), 2023 WL 4534637, at *3 (S.D.N.Y. July 13, 2023). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d, 843, 856 (2d Cir. 1981); see Reubens v. N.Y.C. Dep't of Juv. Just., 930 F. Supp. 887, 889 (S.D.N.Y. 1996) ("The Court may not deny a motion to amend on the basis of delay absent a showing of bad faith or undue prejudice[.]").

2. **Rule 16(b)**

Federal Rule of Civil Procedure 16(b)(4) provides that a court-ordered schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]hen a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16[.]" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 16(b)(4)). In general, "[b]ecause compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis," the Court should address it first. Id.

The burden of demonstrating good cause falls on the moving party. Cepeda v. United States, No. 19 Civ. 5967 (JPC), 2021 WL 465409, at *4 (S.D.N.Y. Feb. 9, 2021); see Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 175 (S.D.N.Y. 2014). "The primary consideration," although, "not . . . the only consideration," is "whether the moving party can demonstrate diligence." Kassner v. 2d Avenue Delicatessen, Inc., 496 F.3d 220, 244 (2d Cir. 2007)). "If the party moving to amend seeks to add claims based on facts it knew or should have known at the time of the amendment deadline, it likely failed to act with sufficient diligence to satisfy Rule 16(b)." Cepeda, 2021 WL 465409, at *4; see Parker v. Columbia Pictures Indus., 204 F.3d 326, 340–41 (2d Cir. 2000) (affirming denial of leave to amend where the plaintiff "had all the information necessary to support [his] claim" when he commenced the lawsuit, "and nothing he learned in discovery or otherwise altered that fact").

## IV. DISCUSSION

Because RBT filed the Motion months after the deadline for amendment in the CMP (see ECF Nos. 17 ¶ (8)(b); 33), RBT must first satisfy Rule 16(b)(4)'s "good cause" standard. Cepeda, 2021 WL 465409, at *10–11. In the Motion, RBT argues that, although HCI initially "failed to disclose" the names of the Directors, documents Shrivastava eventually produced in June 2023 permitted RBT to "verify the names" of the Directors and "uncover[] evidence of fiduciary wrongdoings by" the Directors, including "fraudulent misrepresentations to international and domestic investors during an equity financing." (ECF No. 33 at 5–6).

The Court finds that RBT has shown good cause under Rule 16(b)(4) to add the Directors as defendants and assert the Breach of Fiduciary Claim against them. RBT worked diligently to procure discovery by requesting conferences with the Court to address Defendants' non-

compliance with their discovery obligations.  (ECF Nos. 19; 23; 26; 27; 32).  Although HCI failed to disclose the names of the Directors in its Federal Rule of Civil Procedure 26(a)(1) initial disclosures, based on "recent document productions" from Shrivastava on June 21 and 28, 2023, RBT learned the names of the Directors, along with additional facts that RBT contends warrant asserting the Breach of Fiduciary Duty Claim against them.  (ECF No. 33 at 6).  Because "additional information learned through subsequent discovery" is the basis for RBT's request to amend after the CMP deadline, the Court finds that good cause exists to permit the amendment at this time. Red Rock Sourcing L.L.C. v. JGX L.L.C., 21 Civ. 1054 (JPC), 2023 WL 3736442, at *8–9 (S.D.N.Y. May 31, 2023) (citing newly produced documents as demonstrating good cause for seeking leave to amend); see Samad Bros., Inc. v. Bokara Rug Co., Inc., No. 09 Civ. 5843 (JFK) (KNF), 2010 WL 2835754, at *3 (S.D.N.Y. June 30, 2010) (finding that plaintiff "acted diligently in moving to amend its complaint anew, after receiving, during the discovery phase of the litigation, additional relevant information from the defendants . . . it did not possess previously").

The Court also finds that RBT has met the liberal standard for amendment under Rule 15(a)(2).  As an initial matter, Defendants have failed to respond to the Motion and, accordingly, have not shown that RBT has unduly delayed filing the Motion, acted in bad faith or with dilatory purposes, or caused Defendants or the Directors any prejudice.  See Esmilla v. Cosmopolitan Club, No. 09 Civ. 10169 (DF), 2011 WL 814007, at *2 (S.D.N.Y. Mar. 3, 2011) (granting motion to amend to add new claims and allegations against existing defendants who did not oppose those amendments); Feliciano v. Circulation Promotion & Res., Inc., No. 98 Civ. 8727 (JGK), 1999 WL 1102798, at *1 (S.D.N.Y. Dec. 6, 1999) (granting motion to amend "without opposition from the defendant"); Barbagallo v. Gen'l Motors Corp., No. 88 Civ. 1534 (MJL), 1990

WL 100874, at *3 (S.D.N.Y. July 13, 1990) (granting motion to amend to add claim "to the extent that it is unopposed"). Although the deadlines in the CMP for fact and expert discovery have passed (see ECF No. 17), as RBT notes, the parties have yet to take any depositions and remain in an "early discovery phase." (ECF No. 33 at 10; see ECF No. 32 (Shrivastava stating that he "believes the issue of the pleading amendment must be addressed before depositions are scheduled")). The Court can mitigate any potential prejudice to Defendants or the Directors by extending the fact and expert discovery deadlines. See Cavico v. Brown, No. 18 Civ. 6329W (MWP), 2020 WL 9460506, at *2 (W.D.N.Y. Sept. 3, 2020) (directing parties to confer and propose scheduling order following amendments).

Further, the Court finds that the PFAC raises, at a minimum, "colorable claims" that the Directors may have breached fiduciary duties they owed to RBT, a creditor of HCI, by, inter alia, "making numerous false promises" of payment and transferring HCI's assets to render HCI insolvent and unable to pay its debts to RBT. (ECF No. 33 ¶¶ 136–47). See generally In re Tops Holding II Corp., 646 B.R. 617, 691 (Bankr. S.D.N.Y. 2022) ("Under Delaware law, a creditor's standing to maintain a derivative action against a corporation's directors arises at the precise moment that the corporation passes from solvency to insolvency."); In re I Successor Corp., 321 B.R. 640, 659 (Bankr. S.D.N.Y. 2005) ("Once a corporation becomes insolvent, 'the fiduciary duties of corporate officers and directors also extend to creditors.'") (quoting Kittay v. Atl. Bank of N.Y. (In re Global Serv. Grp. LLC), 316 B.R. 451, 460 (Bankr. S.D.N.Y. 2004)); In re Mrs. Weinberg's Kosher Foods, Inc., 278 B.R. 358, 365 (Bankr. S.D.N.Y. 2002) (referring to possibility that "creditors [may have] acquired . . . direct claims (e.g., breach of fiduciary duty) by virtue of the damages caused to the debtor"); Quadrant Structured Prod. Co. v. Vertin, 102 A.3d 155, 180 (Del. Ch. 2014)

(concluding that creditors of insolvent corporation had standing to assert claims for breach of fiduciary duty that "cause[d], hasten[ed], or otherwise contribute[ed] to insolvency [which] occurred before the point of insolvency in fact"); but see In re Tribune Co. Fraudulent Conveyance Litig., No. 11 MD 2296 (RJS), 2018 WL 6329139, at *7 (S.D.N.Y. Nov. 30, 2018) (noting that "Delaware courts are split regarding whether creditors—once they gain standing to sue—can assert derivative claims against a corporation based on conduct that pre-dates the corporation's insolvency"). Accordingly, the Court cannot say that the proposed addition of the Directors or the assertion of the Breach of Fiduciary Claim against them "would be so plainly futile that leave to amend would be improper." Red Rock Sourcing, 2023 WL 3736442, at *10 (granting leave to amend to add new defendants and claims).

## V. CONCLUSION

For the reasons set forth above, RBT's Motion is GRANTED. The parties shall comply with the following deadlines:

(1) By **November 27, 2023**, RBT shall file a First Amended Complaint ("FAC") and request the issuance of Summons as to the Directors.

(2) By **December 11, 2023**, Defendants shall answer, move, or otherwise respond to the FAC.

(3) By **December 27, 2023**, RBT shall serve Summons and FAC on the Directors and file proof of service on the docket.

(4) Within 21 days of service, the Directors shall answer, move, or otherwise respond to the FAC.

11

Deadlines for fact and expert discovery are adjourned <u>sine die</u> pending completion of the above obligations, following which the Court will enter a new case management plan governing the remainder of pre-trial proceedings.

The Clerk of Court is respectfully directed to close ECF No. 33.

Dated: New York, New York
November 20, 2023

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**