```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------
RED BLACK TREE D.O.O.,
                    Plaintiff,           22-cv-7834 (JGK)

        - against -                      MEMORANDUM OPINION
                                         AND ORDER
HOTEL CREDITS, INC., ET AL.,
                    Defendants.
--------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Red Black Tree D.O.O. ("RBT"), brought this action against various defendants, including Hotel Credits, Inc. ("HCI") and Deepak Shrivastava ("Shrivastava"). Shrivastava now moves for summary judgment dismissing the claims against him pursuant to Federal Rule of Civil Procedure 56. See Notice of Mot., ECF No. 121. For the reasons discussed below, Shrivastava's motion is **granted**.

**I.**

The following facts are taken from the parties' Local Rule 56.1 statements, counterstatements, and supporting papers and are undisputed unless otherwise noted.[1]

HCI, formerly known as Porter and Sail, Inc. ("P&S"), was an internet-based travel and hospitality platform, and Shrivastava was its Chief Financial Officer. Declaration of Deepak Shrivastava ("Shrivastava Decl.")¶¶ 2, 3, 6, ECF No. 121-

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

5. In 2015, RBT and HCI entered into an agreement, pursuant to which RBT would develop digital concierge technology for HCI. Pltfs. Response to Defs. Local Rule 56.1 Statement ("Pltfs. 56.1") ¶ 18, ECF No. 125. HCI allegedly stopped paying invoices issued by RBT in 2018, resulting in unpaid balances exceeding $1.5 million. See Second Amended Complaint ("SAC") ¶¶ 32-34, 113, ECF No. 54.

HCI's revenues decreased substantially in 2020 due to the COVID-19 pandemic, and the company ceased operations in 2021. Shrivastava Decl. ¶¶ 5-6. In February 2021, HCI sold a substantial portion of its assets to another company, Luxury Escapes, for AU$100,000 (approximately US$65,000). Ex. P-N to Declaration of Chi Eng ("Eng Decl.") at 9, ECF No.122-15.

On September 13, 2022, RBT brought this action against HCI and Shrivastava. See ECF No. 1. RBT later amended its complaint to add additional defendants but subsequently agreed to dismiss the claims against those defendants. See ECF No. 120. The operative complaint against Shrivastava is the SAC. RBT asserts claims for breach of contract and account stated (against HCI only); fraudulent transfer under New York and Delaware law (against HCI and Shrivastava); alter ego (against Shrivastava only); as well as a derivative claim for breach of fiduciary duty (against Shrivastava only). See SAC ¶¶ 109-14, 115-17, 128-37, 138-43, 144-55. Following discovery, Shrivastava moved for

2

summary judgment dismissing the claims against him. See ECF No. 121.

## II.

### A.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

### III.

#### A.

Shrivastava first moves for summary judgment dismissing RBT's claims brought under the New York and Delaware fraudulent transfer statutes, N.Y. Debt. & Cred. Law § 273 and 6 Del. Code § 1304. Both New York and Delaware recognize causes of action for actual and constructive fraudulent conveyance. RBT claims that the 2021 sale of substantially all of HCI's assets to Luxury Escapes was constructively fraudulent because AU$100,000 was not a reasonably equivalent value for the transaction. See SAC ¶¶ 121-22, 131-32. Additionally, for the first time in its summary judgment opposition, RBT argues that Shrivastava made several actually fraudulent transfers from HCI's bank account

between 2018 and 2021. See Mem. of Law in Opposition to Mot. for Summ. J. ("Opp.") at 11-15, ECF No. 123.

As revised effective April 4, 2020, § 273(a) of the New York Debtor and Creditor Law provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value for the transfer or obligation, and the debtor:
>   (i) was engaged in or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>   (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. Debt. & Cred. Law § 273(a). Fraudulent transfer claims under Delaware law likewise require a plaintiff to establish that the challenged transaction was made with actual intent to hinder, delay, or defraud, or that it was made without receiving a reasonably equivalent value in exchange. See 6 Del. Code § 1304(a)(1)-(2); see also Amerscape, LLC v. Acacia Com. Servs., Inc., No. CV-N21C-01-078, 2022 WL 2252988 (Del. Super. Ct. June 22, 2022).

In its opposition brief, RBT argues for the first time that between 2018 and 2021, Shrivastava made intentionally fraudulent transfers in the form of unauthorized withdrawals from HCI's

5

corporate bank account. See Opp. 11-15. There are two problems with RBT's argument. First, it appears nowhere in the Complaint, "and a party may not introduce a new theory in opposition to a motion for summary judgment." 232 Dune Rd., LLC v. Scottsdale Ins. Co., No. 20-CV-7721, 2023 WL 1967501, at *12 (S.D.N.Y. Feb. 13, 2023). Second, RBT can point to no evidence showing that Shrivastava made any of these transactions "[w]ith actual intent to hinder, delay or defraud any creditor of" HCI, N.Y. Debt. & Cred. Law § 273(a)(1)-(2); 6 Del. Code § 1304(a)(1)-(2). See Opp. 11-15; Pltfs. 56.1.

RBT's constructive fraudulent transfer claims challenging the Luxury Escapes transaction also fail. RBT conducted little discovery, see Ex. A. to Reply Declaration of Sean M. Lipsky, ECF No. 130-1, and as a result has failed to identify any admissible evidence that HCI's transfer of assets to Luxury Escapes was not for equivalent value. This dooms RBT's fraudulent transfer claims. See Rosenfeld v. Brody, 236 N.Y.S.3d 191, 196 (App. Div. 2025) (dismissing fraudulent transfer claims for failure to allege that the subject conveyance was made without receiving reasonably equivalent value); Renco Grp., Inc. v. MacAndrews AMG Holdings LLC, No. 7668, 2015 WL 394011, at *10 (Del. Ch. 2015) ("To establish a fraudulent transfer claim [under Delaware law], a plaintiff must show . . . inadequate value received for a transfer.").

6

In an attempt to demonstrate that the Luxury Escapes transaction was for less than equivalent value, RBT points to documents purporting to show HCI's valuation in 2018 and 2019. See Opp. 24; Pltf. 56.1 ¶ 3; Exs. P-A & P-B to Eng Decl., ECF Nos. 122-1, 122-2. But these documents predate the Luxury Escapes transaction by several years and thus shed little light on whether the transaction was for reasonably equivalent value in 2021, after the COVID-19 pandemic's effects on the travel industry negatively affected HCI's revenues and business prospects. Because RBT has not submitted any evidence to show that the transfer of assets to Luxury Escapes was not for equivalent value, RBT's constructive fraudulent transfer claims fail as a matter of law. Lippe v. Bairnco Corp., 99 F. App'x 274, 282 (2d Cir. 2004) (summary order) ("As plaintiffs' only plausible theory of harm is that [the defendant] received less than fair value for those sales, and plaintiffs have no evidence supporting that theory, plaintiffs cannot survive summary judgment.").

Shrivastava's motion for summary judgment as to Counts Three and Four is therefore **granted**, and RBT's fraudulent transfer claims against Shrivastava are **dismissed**.

### B.

Shrivastava next moves for summary judgment on RBT's alter ego claim.

7

Both parties agree that Delaware law applies to the alter ego claim. Mem. of Law in Support of Mot. for Summ. J. ("Br.") at 7, ECF No. 121; Opp. 6. "Under New York choice of law rules, where both parties agree as to the applicable law, that agreement is sufficient to establish choice of law." Excelsior Cap. LLC v. Allen, No. 11-cv-7373, 2012 WL 4471262, at *9 (S.D.N.Y. Sept. 26, 2012), aff'd, 536 F. App'x 58 (2d Cir. 2013) (summary order). The Court therefore "follow[s] their lead." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

To prove an alter ego claim under Delaware law, although the "plaintiff need not prove that there was actual fraud," the plaintiff "must show [1] a mingling of the operations of the entity and its owner plus [2] an overall element of injustice or unfairness." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 176 (2d Cir. 2008). On the first prong, courts consider factors such as: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." Manichaean Cap., LLC v. Exela Techs., Inc., 251 A.3d 694, 706 (Del. Ch. 2021). On the second prong, "the corporate structure" itself

8

must "cause fraud or similar injustice." Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999). "A plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces a difficult task. . . . Accordingly, although the question of domination is generally one of fact, courts have granted summary judgment where there has been a lack of sufficient evidence to place the alter ego issue in dispute." Cohen v. Schroeder, 248 F. Supp. 3d 511, 518 (S.D.N.Y. 2017), aff'd 724 F. App'x 45 (2d Cir. 2018) (summary order).

The principal basis for RBT's alter ego claim is that Shrivastava allegedly paid HCI's debts, including invoices issued by RBT, from his personal bank account. SAC ¶¶ 139-41. But RBT has not identified any evidence to support that assertion, see Pltfs. 56.1, and Shrivastava has produced bank statements showing that payments to RBT were in fact drawn from HCI's bank account, see Ex. C to Shrivastava Decl., ECF No. 121-6. And while RBT alleges Shrivastava used HCI's bank accounts for personal expenses, RBT can point to only $1,200 in wine purchases on HCI's debit card as evidence of allegedly misappropriated funds. See Opp. 7, Ex. P-D to Eng Decl., ECF No. 122-4. But this is a de minimis amount, and there is no evidence whether the wine was used for corporate entertainment.

9

RBT also contends that HCI was Shrivastava's alter ego because HCI was insolvent and because Shrivastava has not produced internal governance documents like board minutes or procedures for the use of the company's bank account. But "mere insolvency is not enough to allow piercing of the corporate veil, since if creditors could enter judgments against shareholders every time that a corporation becomes unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless." Cohen, 248 F. Supp. 3d at 520. "Instead, insolvency and undercapitalization are factors to be considered in determining whether the corporation engaged in conduct that unjustly shields its assets from its creditors." Id. Likewise, "the Second Circuit has repeatedly recognized that with respect to small, privately-held corporations, the trappings of sophisticated corporate life are rarely present, and we must avoid an over-rigid preoccupation with questions of structure [or] financial and account sophistication." Id. at 521. Instead, a company's adherence to corporate formalities is "one of several factors that are used to determine whether the corporation is a dummy for its individual stockholders who are in reality carrying on business in their personal capacities for purely personal rather than corporate ends." Id. at 522. There is no evidence that Shrivastava or HCI's board kept the company insolvent to shield

10

its assets from creditors or that they used the company for "purely personal" ends. Id.

And contrary RBT's to arguments, there is ample evidence that HCI appropriately observed corporate formalities. For example, HCI had its own bank account, as well as its own offices, phone number and computer system. Shrivastava Decl. ¶¶ 20, 23. The company also had a board of directors, and it hired legal counsel to oversee adherence to corporate formalities. See id. ¶¶ 15-17.

No reasonable jury could find that HCI was Shrivastava's alter ego. There is no evidence that Shrivastava kept HCI insolvent in order to shield the company's assets from creditors, that Shrivastava "siphoned corporate funds," or that HCI "functioned as a façade" for Shrivastava. NetJets, 537 F.3d at 177. And the record shows that, rather than using HCI for "personal rather than corporate ends", HCI and Shrivastava adequately observed corporate formalities. Cohen, 248 F. Supp. 3d at 522. Shrivastava's motion for summary judgment as to Count Five is therefore **granted**, and RBT's alter ego claim is dismissed.

### c.

Finally, Shrivastava moves for summary judgment on RBT's derivative claim on behalf of HCI for breach of fiduciary duty. RBT is not a shareholder of HCI. However, under Delaware law,

11

"the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties." N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 101 (Del. 2007).

As an initial matter, RBT argues that Shrivastava breached his fiduciary duties of good faith and loyalty by failing to obtain approval of the majority of HCI's preferred stockholders before selling substantially all of the company's assets to Luxury Escapes, as required by HCI's Certificate of Incorporation.[2] See Opp. 18-22. RBT further argues that Shrivastava breached his duty of care by failing to conduct any due diligence for the Luxury Escapes transaction. See Br. 22-24.

Shrivastava contends that Article Nine of HCI's Certificate of Incorporation, which purports to exculpate the company's directors from personal liability for breaches of fiduciary duty, bars RBT's derivative claim. See Br. 11-12; Exs. A and B to Shrivastava Decl. However, Delaware law limits the applicability of such exculpatory clauses only to claims for breach of the duty of care. John Swann Holding Corp. v. Simmons, 62 F. Supp. 3d 304, 309 (S.D.N.Y. 2014); 8 Del. Code §

---

[2] Under Delaware law, the duty of good faith is a "subsidiary element" of the duty of loyalty. Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006).

12

102(b)(7). Therefore, Article Nine cannot exculpate Shrivastava from a duty of loyalty claim.

To survive summary judgment dismissing its breach of fiduciary duty claim, RBT must first contend with the business judgment rule, which provides that "under Delaware law, a breach of fiduciary duty analysis begins with the rebuttable presumption that a board of directors acted with loyalty and care." Huff Energy Fund, L.P. v. Gershen, No. CV-11116, 2016 WL 5462958, at *11 (Del. Ch. Sept. 29, 2016). Under the business judgment rule, "directors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." Brehm v. Eisner, 746 A.2d 244, 264 n.66 (Del. 2000). Delaware courts have recognized that "a director who knowingly causes the company to violate its charter to the detriment of the company and its stockholders acts in bad faith." Lacey ex rel. S. Copper Corp. v. Mota-Velasco, No. CV-2019-0312, 2021 WL 508982, at *9 (Del. Ch. Feb. 11, 2021) (emphasis added); see also Stone, 911 A.2d at 370 (noting that directors can breach their duty to discharge their fiduciary obligations in good faith by "failing to act in the face of a known duty to act").

13

HCI's board appears to have caused the company to violate its charter when it approved Luxury Escapes transaction without the approval of the company's preferred shareholders. Article Three of HCI's Certificate of Incorporation requires the written consent or affirmative vote of a majority of the company's preferred stockholders in order to effectuate a transaction disposing of all or substantially all of the company's assets. See Ex. B to Shrivastava Decl. §§ 2.3, 3.3. As RBT points out, Shrivastava testified at his deposition that HCI's board "socialize[d] the deal" by having "a conversation or two" with the company's shareholders, Ex. P-F to Eng Decl. at 62:23-63:19, ECF No. 122-6, far short of the requirements outlined in the company's Certificate of Incorporation.

However, the board's apparent failure to adhere to the requirements of HCI's Certificate of Incorporation with respect to the Luxury Escapes transaction does not rise to the level of "bad faith" under Delaware law because RBT has not shown that the transaction was for less than equivalent value, see Section III.A, supra, and thus that it was "to the detriment of the company and its stockholders." Lacey, 2021 WL 508982, at *9. Nor has RBT identified any evidence that Shrivastava or the board "lacked independence relative to the [transaction], . . . act[ed] in a manner that cannot be attributed to a rational business purpose or reach[ed] their decision by a grossly

14

negligent process." Brehm, 746 A.2d at 264 n.66. It is noteworthy that there is no evidence that the preferred shareholders have objected to the lack of a formal vote from them approving the Luxury Escapes transaction.

Because there is insufficient evidence from which a reasonable jury could find that Shrivastava breached his duty of loyalty, Shrivastava's motion for summary judgment as to Count 6 is **granted,** and RBT's derivative claim for breach of fiduciary duties is dismissed.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the reasons explained above, Defendant Shrivastava's motion for summary judgment is **granted.** The claims against defendant Shrivastava are **dismissed with prejudice.**

The Clerk is respectfully directed to close ECF No. 121.

SO ORDERED.
Dated:   New York, New York
         September 17, 2025

_____
John G. Koeltl
United States District Judge