UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RED BLACK TREE D.O.O.,

Plaintiff,

v.

HOTEL CREDITS, INC.,

Defendant.

CIVIL ACTION NO.: 22 Civ. 7834 (JGK) (SLC)

**REPORT & RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JOHN G. KOELTL**, United States District Judge:

## I. INTRODUCTION

Before the Court in this action arising from the breach of a contract for software development services is an inquest on the damages to which Plaintiff Red Black Tree D.O.O. ("RBT") is entitled to receive from Defendant Hotel Credits, Inc. ("HCI"), which failed to appear and defend in this action and is in default. (Dkt. Nos. 65; 140; 141–143).[1] For the reasons set forth below, we respectfully recommend that a default judgment in favor of RBT and against HCI be entered in accordance with § IV, infra.

## II. BACKGROUND

### A. Factual Background

We presume the reader's familiarity with, and use the same defined terms in, the Memorandum Opinion and Order of the Honorable John G. Koeltl dated September 17, 2025. See Red Black Tree D.O.O. v. Hotel Credits, Inc., No. 22 Civ. 7834 (JGK), 2025 WL 2662339, at *1

[1] Defendants Caitlin Zaino von During, Leland Kwee, and Moon YoonWhe were dismissed without prejudice pursuant to the Court's Order dated November 21, 2024. (Dkt. No. 120). Defendant Deepak Shrivastava ("Shrivastava") was dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated September 17, 2025. (Dkt. No. 131). The only remaining Defendant is HCI. (See Dkt. No. 133).

(S.D.N.Y. Sept. 17, 2025) ("Red Black I"). Given HCI's default, we accept as true all well-pleaded allegations in RBT's second amended complaint (the "SAC"), except as to damages. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Cawthon v. Nguyen, No. 22 Civ. 7398 (AS) (SLC), 2024 WL 1557301, at *1 (S.D.N.Y. Jan. 23, 2024), adopted by, 2024 WL 1555775 (S.D.N.Y. Apr. 10, 2024).[2]

RBT is a Serbian company that provides software development services. (Dkt. No. 54 ¶ 1). HCI, known until January 2021 as Porter and Sail, Inc. ("P&S"), is a Delaware company with an office in New York City that provided digital concierge services to hotels worldwide. (Id. ¶¶ 2–4, 19). On February 9, 2015, RBT and P&S entered into an independent contractor agreement (the "Agreement") pursuant to which RBT would "develop the mobile concierge technology for P&S." (Id. ¶ 20). Shrivastava signed the Agreement as P&S's "Co-Founder." (Id. ¶ 21). Pursuant to the Agreement, RBT was to provide two full time resources to work on P&S's engagement, in return for which P&S promised to pay RBT a "blended monthly fee per resource (person) at a rate of USD 8,000.00 through monthly installments of USD 16,000.00 per month." (Id. ¶¶ 22–23).

During the term of the Agreement, RBT deployed between four to eight developers on P&S projects. (Dkt. No. 54 ¶ 28). P&S "[was] always satisfied with the contractual performance of RBT," whom P&S praised for its "extra hard work, long hours, and effort[.]" (Id. ¶¶ 29–30).

Pursuant to the Agreement, RBT issued at the end of each month a monthly invoice with a payment due date of eight days from the date of the invoice. (Dkt. No. 54 ¶ 31). Until

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

March 2016, P&S generally paid the invoices from Shrivastava's bank account within two months of the date of each invoice. (Id. ¶ 32). The payments then "became sporadic[,]" such as, for example, a $20,000 payment by wire transfer in February 2018, and three partial payments in 2017 that were each several months late. (Id. ¶¶ 32–33). Despite the lack of payment, RBT "continued to perform its contractual obligations and frequently reminded P&S executives of the increasing outstanding balances[.]" (Id. ¶ 35). P&S gave RBT "numerous assurances that the outstanding balances [would] be paid[,]" and even, at one point, proposed a payment schedule. (Id. ¶¶ 37–54; see Dkt. No. 54-3).

On February 27, 2020, RBT sent P&S a letter demanding immediate payment of the outstanding balance, which was $1,523,330.01 as of December 31, 2019. (Dkt. Nos. 54 ¶ 55; 54-4). In March 2020, P&S instructed RBT to suspend all work. (Dkt. No. 54 ¶ 57). In September 2020, Shrivastava explained that P&S did "not have any ability nor the capital base to remit funds for any past invoices" but offered "equity in the new iteration of the Company" in exchange for extinguishing the outstanding balance. (Id. ¶¶ 61, 66).

On February 4, 2021, P&S sold substantially all its assets to Luxury Escapes for $100,000 (Australian Dollars) pursuant to an asset purchase and sale agreement (the "Purchase Agreement"). (Dkt. No. 54 ¶¶ 92–93). On that date, the outstanding balance on the unpaid invoices was more than $1.55 million plus interest (the "Debt"). (Id. ¶ 96). In a schedule annexed to the Purchase Agreement, P&S warranted that it was "able to pay its debts as and when they fall due, and is not taken under applicable laws to be unable to pay its debts." (Id. ¶ 94). RBT alleges on information and belief that "after P&S's transfer of proceeds to its secured creditors and insiders . . . P&S remained or rendered [sic] insolvent as it no longer had sufficient assets to

satisfy the outstanding debt owed to [RBT,]" and "is no longer an operating entity or operating in a zone of insolvency [sic]." (Id. ¶¶ 99, 102).

On July 19, 2021, the Internal Revenue Service filed with New York State a federal tax lien against P&S. (Dkt. No. 54 ¶ 100). As of April 2023, P&S had $770 cash on hand. (Id. ¶ 103). At least as of February 2024, P&S had not made any further payments to RBT with respect to the Debt. (Id. ¶ 101).

**B. Procedural Background**

On September 13, 2022, RBT filed the original complaint, naming HCI and Shrivastava as defendants. (Dkt. No. 1 (the "Complaint")). RBT named additional defendants in its first amended complaint (Dkt. No. 36), but later agreed to dismiss those defendants. (Dkt. Nos. 54; 120). The operative complaint against HCI is the SAC, which asserts against HCI claims for breach of contract (the "Contract Claim"), account stated (the "Account Stated Claim"), and fraudulent transfer under New York and Delaware law (the "Fraudulent Transfer Claims"). (Dkt. No. 54 ¶¶ 109–37). See Red Black I, 2025 WL 2662339, at *1.

On September 27, 2022, RBT served HCI with the summons and Complaint, and on November 2, 2022, HCI, represented by counsel, filed an answer. (Dkt. Nos. 8; 13). HCI was subsequently served with the FAC and the SAC via ECF on its counsel of record on November 27, 2023 and February 9, 2024, respectively. (Dkt. Nos. 36; 54; 65). HCI did not file an answer in response to the FAC or the SAC. (Dkt. No. 65). Accordingly, on May 16, 2024, the Clerk of the Court entered a certificate of default as to HCI. (Dkt. No. 65 (the "CoD")).

On September 17, 2025, Judge Koeltl granted Shivastava's motion for summary judgment and dismissed the claims against him with prejudice. See Red Black I, 2025 WL 2662339, at *5.

As is relevant here, Judge Koeltl found that because RBT had adduced insufficient evidence that P&S's transfer of assets to Luxury Escapes in February 2021 "was not for equivalent value[,]" the Fraudulent Transfer Claims "fail[ed] as a matter of law." Id. at *3. Judge Koeltl then granted RBT's request to seek a default judgment against HCI, (Dkt. No. 134), and on October 22, 2025, RBT filed a proposed order to show cause, supporting declaration, statement of damages, and proposed judgment. (Dkt. Nos. 136–139 (the "Damages Submission")). On October 23, 2025, Judge Koeltl ordered HCI to respond to the Damages Submission by November 12, 2025, warning that if it failed to do so, a default judgment would be entered without a trial. (Dkt. No. 140 (the "Oct. 23 Order")). RBT served the Oct. 23 Order on HCI, but HCI failed to timely respond. (Dkt. No. 141–42). Accordingly, on November 18, 2025, Judge Koeltl ordered that RBT was "entitled to a default judgment against HCI" and referred the matter to the undersigned "for an inquest to determine the appropriate damages to be awarded, as well as any other provisions of an appropriate judgment." (Dkt. Nos. 142 (the "Nov. 18 Order"); 143).

On November 19, 2025, the Court ordered HCI to respond to the Damages Submission, warning that the failure to respond or contact the Court to request an in-court hearing would result in the issuance of a report and recommendation on damages without a hearing. (Dkt. No. 144 (the "Nov. 19 Order")). RBT served the Nov. 19 Order on HCI the next day (Dkt. No. 145), but to date, HCI has neither responded to the Damages Submission nor contacted the Court.

## III. DISCUSSION

### A. Legal Standards

#### 1. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55. See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default. See Fed. R. Civ. P. 55(a). Second, after entry of default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest. Corp.,

No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action.").

**2. Determining Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether [p]laintiff has provided adequate support for [its requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

**3. Determining Damages**

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its]

entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment.").

**B. Application**

**1. Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered the CoD as to HCI, and Judge Koeltl entered the Nov. 18 Order. (Dkt. Nos. 65; 142). Considering the relevant factors set forth above, the Court first finds, based on HCI's failure to submit any response to the Court's orders after having been properly served and warned, (Dkt. Nos. 140; 141; 145), that HCI's default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s]

willful conduct"). Second, delaying entry of a default judgment might prejudice RBT, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), adopted by, 2009 U.S. Dist. LEXIS 6074 (S.D.N.Y. Jan. 26, 2009). Third, HCI has failed to respond to the Court's orders to appear and defend in this action. (Dkt. Nos. 140–41; 144–45). Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in RBT's favor, entry of default judgment fixing the award of damages HCI must pay to RBT is proper.

**2. Liability**

We next consider the elements for HCI's liability for the claims asserted against it: the Contract Claim, the Account Stated Claim, and the Fraudulent Transfer Claims. (Dkt. No. 54 ¶¶ 109–37).

**a. Jurisdiction and Venue**

As a threshold matter, the Court has subject matter jurisdiction over this action. RBT is a Serbian company, HCI is a Delaware corporation, and RBT seeks to recover the Debt, which totals over $1.5 million. (Dkt. No. 54 ¶¶ 1, 2, 114, 117). The Court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The Court also has personal jurisdiction over HCI, "a necessary prerequisite to entry of a default judgment." Reilly v. Commerce, No. 15 Civ. 5118 (PAE) (BCM), 2016 WL 6837895, at *2–3 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016), because HCI maintained a regular office in New York City and was properly served with the summons and Complaint as well as the FAC and the SAC. (Dkt. Nos. 8; 65). See Fed. R. Civ. P. 4(h)(1); N.Y. C.P.L.R. § 302(a)(1). Finally, venue is proper under 28 U.S.C. § 1391(b)(3).

**b. Contract Claim**

To state a claim for breach of contract under New York law, RBT must establish four elements: "(1) the existence of a contract; (2) the performance of the contract by one party; (3) the breach of that contract by the other party; and (4) damages." LG Cap. Funding, LLC v. Energy Edge Techs. Corp., No. 17 Civ. 9021 (AKH), 2018 WL 4278344, at *1 (S.D.N.Y. Aug. 28, 2018); accord Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012).

As to the first element, RBT alleges the existence of the Agreement, pursuant to which it provided software development services to P&S in exchange for a monthly fee. (Dkt. No. 54 ¶¶ 20–23). Second, RBT adequately alleges its performance under the Agreement by providing several employees to work on P&S's projects. (Id. ¶ 28). Third and fourth, RBT alleges that P&S, subsequently HCI, has failed to pay the outstanding invoices totaling over $1.55 million. (Id. ¶¶ 55; 96; see Dkt. No. 138). Accepting RBT's allegations as true, RBT has sufficiently demonstrated HCI's liability for breach of the Agreement. Accordingly, we respectfully recommend that the Court find HCI liable on the Contract Claim.

**c. Account Stated and Fraudulent Transfer Claims**

As noted above, RBT also asserts an Account Stated Claim and the Fraudulent Transfer Claims. (Dkt. No. 54 ¶¶ 115–37). On all these claims, RBT seeks the same damages — at least $1.55 million plus interest — arising from the same injury as the Contract Claim. (See id. ¶¶ 113–14, 117, 125–26, 135–36). RBT, however, "is entitled to only a single recovery." Surfside Sols. Inc. v. Helix House LLC, No. 24 Civ. 6305 (DEH) (BCM), 2025 WL 2978794, at *5 (S.D.N.Y. July 11, 2025), adopted by, 2025 WL 2978055 (S.D.N.Y. Oct. 22, 2025); see Conway v. Icahn & Co., Inc., 16 F.3d 504, 511 (2d Cir. 1994) ("Where a plaintiff seeks recovery for the same damages under

different legal theories, only a single recovery is allowed."). Accordingly, we respectfully recommend that the Account Stated and Fraudulent Transfer Claims be dismissed as duplicative. See Arch Specialty Ins. Co. v. Sealmax Glass Sys., Inc., No. 16 Civ. 1409 (PKC) (SMG), 2017 WL 11505249, at *4 (collecting cases and recommending dismissal of account stated claim as duplicative of breach of contract claim).[3]

### 3. Damages

#### a. Evidentiary Basis

No party has requested a hearing on the issue of damages. We must first determine whether RBT has provided sufficient evidence to support its claimed damages. See Utica Leaseco, LLC v. Spatium Enter., LLC, No. 20 Civ. 4933 (JGLC) (SLC), 2025 WL 3243883, at *6 (S.D.N.Y. Oct. 15, 2025), adopted by, 2025 WL 3242950 (S.D.N.Y. Nov. 20, 2025). In the Damages Submission, RBT includes a damages statement supported by a declaration from its counsel and exhibits attached to the SAC. (Dkt. Nos. 54-2; 137; 138).

Despite warnings from the Court (Dkt. Nos. 140; 142; 144), HCI has not responded to the Damages Submission or the Court's Orders and has not otherwise provided any contrary evidence to the Damages Submission. We therefore find that RBT has met its evidentiary burden as to damages and will conduct the damages inquest based solely on Damages Submission and the exhibits to the SAC, which provide a sufficient basis from which to calculate damages on the Contract Claim. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found.

[3] In addition, we note that Judge Koeltl found that RBT had no evidence "that the 2021 sale of substantially all of HCI's assets to Luxury Escapes was constructively fraudulent" and dismissed the Fraudulent Transfer Claims as against Shrivastava. Red Black I, 2025 WL 2662339, at *2–3. Even though the Fraudulent Transfer Claims as against HCI were not before Judge Koeltl at summary judgment, the same reasoning would seem to apply to prevent RBT from recovering on these claims as against HCI as well.

Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon review of detailed affidavits and documentary evidence."); accord Perez v 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y. Dec. 4, 2019); see also Fed. R. Civ. P. 55(b)(2).

**b. Contract Damages**

"The general rule for measuring damages for breach of contract . . . is the amount necessary to put the plaintiff in the same economic position [it] would have been in had the [d]efendant fulfilled [the] contract." Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp., No. 19 Civ. 11512 (AJN) (SLC), 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), adopted by, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022). "In New York, damages for a breach of contract claim based on a failure to pay is generally limited to recovery of the unpaid contract amount and accrued interest." Fonz, Inc. v. City Bakery Brands, LLC, No. 19 Civ. 10854 (LJL) (RWL), 2021 WL 5235190, at *4 (S.D.N.Y. Sept. 27, 2021) (citing Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 40–41 (2d Cir. 2009)).

RBT seeks a principal amount of $1,551,330.01. (Dkt. Nos. 54 ¶¶ 113–14; 54-2; 138). Based on the SAC and the Damages Submission, RBT has made a sufficient showing that it is entitled to the principal amount of $1,551,330.01. See Utica Leaseco, 2025 WL 3243883, at *6–7 (awarding principal amount supported by documentary evidence); accord Surfside Sols. Inc., 2025 WL 2978794, at *6.

RBT also seeks 9% per annum simple interest from March 30, 2020. (Dkt. Nos. 54 ¶¶ 113–14; 54-2; 138). Pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Sections 5001 and 5004, a party shall recover prejudgment interest at the rate of 9% per annum "upon a sum

awarded because of a breach of performance of a contract[.]" N.Y. C.P.L.R. §§ 5001(a), 5004; see Rhodes v. Davis, 628 F. App'x 787, 792 (2d Cir. 2015) (explaining that under New York law, interest on contract damages "is generally mandatory"). When calculating the interest due, a court should generally look to "the earliest ascertainable date the cause of action existed[.]" N.Y. C.P.L.R. § 5001(b). RBT does not explain the rationale for its request for interest beginning on March 30, 2020, but we infer that RBT bases that date on the allegation in the SAC that as of March 27, 2020, "P&S was insolvent" and that RBT's "Statement of Accounts[,]" attached as Exhibit 2 to the SAC, is dated March 30, 2020. (Dkt. No. 54 ¶¶ 33, 56; 54-2). Consistent with New York law, we respectfully recommend that RBT be awarded prejudgment interest at a rate of 9% per annum on the principal amount of $1,551,330.01 from March 30, 2020 through the date of judgment. See Koutsoudakis & Iakovou Law Grp., PLLC v. Osman, No. 22 Civ. 6351 (ER) (SLC), 2024 WL 5284018, at *8 (S.D.N.Y. Dec. 20, 2024) ("Koutsoudakis I"), adopted by 2025 WL 1184214 (S.D.N.Y. Apr. 23, 2025) (awarding interest at 9% per annum on unpaid contractual amount).[4]

Finally, although RBT does not specifically reference post-judgment interest, as the Second Circuit has explained, "an award of post-judgment interest" pursuant to 28 U.S.C. § 1961(a) "is mandatory." Koutsoudakis I, 2024 WL 5284018, at *8 (citing Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008)). We therefore respectfully recommend that RBT be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

---

[4] If prejudgment interest were calculated using the date of this Report and Recommendation, the calculation would be as follows: 6.2 years (2,263 days between March 30, 2020 and June 10, 2026 / 365) * $1,551,330.01 * 0.09 = $865,642.15. Interest will continue to accrue until the date of judgment at $382.52 per day ($1,551,330.01 * (0.09/365)).

**4. Costs**

Federal Rule of Civil Procedure 54 provides that, "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "The requesting party must substantiate [its] request for costs." Guo v. Tommy's Sushi, Inc., No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); see Euceda v. Preesha Operating Corp., No. 14 Civ. 3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs."), adopted by, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

RBT seeks an award of costs in the amount of $1,905.00, consisting of the court filing fee of $405 and $1,500 for "Process Server fee for service, if any[.]" (Dkt. No. 138). RBT does not provide any receipts or documentary support for either of these costs, and it is unclear whether RBT actually incurred any service costs. The Court may, however, take judicial notice of the payment of the filing fee on the docket, which is indicated here in the amount of $402.00. (Dkt. No. 1). See, e.g., Sevilla v. Nekasa Inc., No. 16 Civ. 2368 (AJP), 2017 WL 1185572, at *8 (S.D.N.Y. Mar. 30, 2017). Accordingly, we respectfully recommend that RBT be awarded costs only in the amount of $402.00.

## IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that a default judgment in favor of RBT and against HCI be entered as follows:

(1) RBT be awarded

a. Compensatory damages of $1,551,330.01 on its Contract Claim;

b. Prejudgment interest at a rate of 9% per annum on the principal amount of $1,551,330.01 from March 30, 2020 through the date of judgment;

c. Post-judgment interest in an amount consistent with 28 U.S.C. § 1961; and

d. Costs in the amount of $402.00.

(2) The Account Stated and the Fraudulent Transfer Claims, which are duplicative of the Contract Claim, be **DISMISSED WITH PREJUDICE**.

Dated: New York, New York
June 10, 2026

Sarah L. Cave

**SARAH L. CAVE**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Koeltl.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).